## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 01-CR-65-TCK |
| | ) | (05-CV-312-TCK) |
| JOSE GONZALEZ EDEZA, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Now before the Court is defendant Jose Gonzalez Edeza's  pro se motion seeking to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255 (Dkt. # 321).

Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack,  may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 (a).

### Background

On June 8, 2001, Edeza and four co-defendants were named in an eight-count sealed indictment (Dkt.# 19) unsealed on June 21, 2001 (Dkt. # 27).  The case involved the prosecution of Edeza, Jose DeJesus Fernandez, Carlos Ruben Rodrigues, Ronald Valencia Barrera, and Celestino Briones for participation in a methamphetamine distribution organization that imported methamphetamine from Salt Lake City, Utah, to Tulsa, Oklahoma.  The defendants were charged with participating in a large scale drug trafficking operation, along with various other substantive offenses.  Edeza was charged in count one with conspiracy to possess and distribution of methamphetamine in violation of 21 U.S.C. §846; in count seven, with interstate travel to aid

distribution of methamphetamine in violation of 18 U.S.C. § 1952; and in count eight, with possessing with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1).   The indictment alleged the conspiracy began on or about May 1, 2001, and continued until the date of the indictment (June 8, 2001).

On June 26, 2001, Michael McGuire, a member of the Criminal Justice Act ("CJA") panel, was appointed to represent Edeza (Dkt. # 32).   On May 8, 2002, attorney McGuire was allowed to withdraw from the case 12 days prior to trial because of his participation in an on-going lengthy jury trial in the Western District of Oklahoma which conflicted with the commencement of Edeza's jury trial (Dkt. # 174).   Beverly Atteberry, another CJA panel member, was appointed as replacement counsel (Dkt. # 173).   The case was to commence trial on May 20, 2002.   Attorney McGuire's trial in the Western District concluded on May 15, 2002, earlier than anticipated.   Prior to jury selection, the Court conducted an ex parte hearing and, at the request of Edeza, re-appointed counsel McGuire as co-counsel with Ms. Atteberry to represent Edeza during trial (Dkt. # 185).   As scheduled, Edeza and co-defendant Fernandez proceeded to trial by jury on May 20, 2002.   The trial lasted seven days. Edeza and Fernandez were both found guilty of each count on which they were charged.[1] (Dkt. ## 178, 184).   The Court sentenced Edeza to 295 months imprisonment followed by ten years of supervised release (Dkt. ## 235, 238).   Edeza appealed his conviction and sentence. The Tenth Circuit issued its decision affirming Edeza's conviction and sentence on March 1, 2004.   United

_____

[1]   On April 10, 2002, upon motion of the government and Order of the Court, the indictment was dismissed without prejudice as to co-defendants Carlos Ruben Rodriguez and Ronald Valencia Barrera  (Dkt. ## 158 and 159).  Both these individuals were government witnesses at Edeza's trial (Dkt. 231 at 5).  On February 8, 2002, Celestino Briones entered a plea of guilty to a one count information charging him with conspiracy to possess methamphetamine with intent to distribute and to distribute in excess of 500 grams in violation of 18 U.S.C. § 371 (Dkt. # 131).

States v. Edeza, 359 F.3d 1246 (10th Cir. 2004).[2]  Edeza's petition for writ of certiorari was denied

by the Supreme Court on June 1, 2004 (Dkt.# 298).

Edeza signed his § 2255 motion on May 26, 2005, and it was timely filed of record with the

Court on June 6, 2005.[3]   The Court finds that it has jurisdiction over his § 2255 motion for

determination on the merits.

**Issues Raised**

In his § 2255 motion, Edeza raises the following issues:

1.      Whether he was deprived of his right to counsel because they failed to "subject the prosecution's case to meaningful adversarial testing," (citing United States v. Cronic). (Dkt.# 321 at 4).

2.      In the alternative, whether he was denied effective assistance of counsel during pretrial and trial of his case, (citing Strickland v. Washington). (Dkt.# 321 at 5-9).

3.      Whether he was denied his Sixth Amendment right to a jury trial when his sentence was enhanced under the Sentencing Guidelines based on facts not submitted to a jury for determination beyond a reasonable doubt, (citing United States v. Booker, and Blakely v. Washington). (Dkt. # 321 at 10-12).

4.      Whether he was derived of due process guaranteed by the Fifth Amendment by the Sentencing Guidelines mandating the Court's determination of his sentencing enhancements under a preponderance of evidence standard. (Dkt. # 321 at 12-13).

5.      Whether he was prejudiced due to denial of rights afforded under Article 36 of the Vienna Convention. (Dkt. # 321 at 14-16).

---

[2]     On appeal, Edeza argued that (1) the district court erred in enhancing his sentence under U.S.S.G. § 3B1.1(a), contending both insufficient evidence to establish his role as manager and supervisor, and insufficient findings to support the enhancement; and (2) a jury instruction constructively amended the Travel Act offense charged in count eight or caused a fatal variance between the charging language in the indictment and the evidence offered at trial. Id. at 1248

[3]     Under the prisoner mailbox rule, Edeza's motion was timely. See Houston v. Lack, 487 U.S. 266, 276 (1988) (a pro se prisoner's pleading is timely filed if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the document.)

## Analysis

As to his first issue,  Edeza claims his trial attorneys were so inadequate that, in effect, no assistance of counsel was provided to him.  The Sixth Amendment to the United States Constitution guarantees more than the appointment of counsel.  It recognizes that the right to counsel is the right 'to effective assistance of counsel."  <u>United States v. Cronic</u>, 466 U.S. 648, 654 (1984).  The Sixth Amendment reads, in relevant part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

Generally,  a counsel's effectiveness is governed by the two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), where the defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  <u>Id.</u> at 687.  The defendant carries the burden of proof on both factors; and judicial scrutiny of counsel's performance under <u>Strickland</u> is highly deferential.  <u>Id.</u> at 689.

In a narrow class of cases, however,  including instances where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," prejudice is presumed.  <u>Turrentine v. Mullin</u>, 390 F.3d 1181, 1207 (10th Cir. 2004) (citing <u>United States v. Cronic</u>, 466 U.S. at 659). Edeza claims his attorneys were inept because they failed: (1) to subject the government's case to a meaningful adversarial test, (2) to provide him an opportunity to participate in his own defense, and (3) to ensure that he understood the criminal process.  The latter two complaints, however, are not appropriate factors to be evaluated under <u>Cronic</u>.  The Tenth Circuit instructs that "[i]n order to presume prejudice under <u>Cronic</u>, the attorney's failure to test the prosecutor's case must be complete."  <u>Turrentine</u>, 390 F.3d at 1207-08.  The <u>Cronic</u>  presumption of prejudice is inapplicable

4

where counsel actively participated in all phases of the trial proceedings, was present in the courtroom, conducted limited cross-examination, made evidentiary objections, and gave a closing argument. Id. at 1208.

In considering Edeza's first issue, the Court revisited all pleadings filed in the case and the ten volumes of Edeza's trial transcripts, consisting of 996 pages.[4]  Edeza had two good lawyers appointed to represent him, rather than the customary practice of one appointed counsel.  Mr. McGuire was Edeza's attorney throughout pretrial.  Ms. Atteberry was Edeza's lead counsel during trial.[5]  From said review, the Court finds that counsel Atteberry actively participated in all phases of the trial proceeding and was present in the courtroom throughout the trial.

The record reflects that Ms. Atteberry zealously represented Edeza at trial.  Ms. Atteberry presented  her opening statement to the jury on May 20, 2002.  (Tr. dated May 20, 2002 at 31- 32).  Ms. Atteberry cross-examined government's witnesses Task Force Agent Carlos Guzman with the Tulsa County Sheriff's Office on May 23, 2002 (Tr. Vol. III at 459-484), Corporal Harold Wells with

---

[4]  The trial transcripts in this case consist of the following:  Transcript of Ex Parte Hearing held on May 20, 2002, filed on June 7, 2002, 12-pages (a hearing granting  Edeza's request to permit attorney McGuire to re-enter an appearance as co-counsel with attorney Atteberry); Transcript of Opening Statements dated May 20, 2002, 32-pages; Transcript of the jury trial, Volume I, held on May 21, 2002, filed on October 7, 2002, 173-pages; Transcript of jury trial, Volume II, held on May 22, 2002, filed on October 7, 2002, pages 174-402; Transcript of jury trial, Volume III, held on May 23, 2002, filed on October 7, 2002, pages 403-623; Transcript of jury trial, Volume IV, held on May 24, 2002, pages 624-728; Transcript of jury trial, Volume V, held on May 28, 2002, pages 729-831; Transcript of Closing Statements held on May 29, 2002, 61 pages; Transcript of Sentencing Hearing held on December 4, 2002, filed on December 6, 2002, 38 pages; Transcript of Continued Sentencing held on December 18, 2002, filed on January 10, 2003, 26 pages.

[5]  Ms. Atteberry explained the roles each counsel assumed during the trial.  "During the trial, Mr. Edeza switched back and forth as to whether or not he wanted Mr. McGuire or me or both as his counsel.  Mr. McGuire and I divided most of the work during the Jury Trial.  I handled witnesses and cross examination issues.  Mr. McGuire dealt with the jury instructions, other procedural matters and trying to keep Mr. Edeza calm." ( Dkt. #331 at Attachment 1, p. 2).

5

the Tulsa Police Department on May 23, 2002 (Tr. Vol. III at 588-593), Celestino Briones a co-conspirator on May 24, 2002 (Tr. Vol. IV at 679-694), and Special Agent Eric Katz with the Department of Justice, Drug Enforcement Administration on May 28, 2002 (Tr. Vol. V at 799-803).

The Court finds that counsel Atteberry made sound objections in an effort to exclude evidence.  The evidence against defendant Edeza was initially presented on the third day of trial through the testimony of  Agent Guzman.  Acting undercover, Agent Guzman negotiated the purchase of a large quantity of methamphetamine from Fernandez and Edeza.  Agent Guzman was wired with a recording device.  His negotiations with Fernandez and Edeza were contemporaneously recorded in their native Spanish language,  later transcribed to English and presented to the jury through written transcripts.  Many of  Edeza's recorded statements were "unintelligible" and appeared as incomplete statements in the transcripts.  These transcripts were used by the government to corroborate Agent Guzman's testimony of the drug transactions with the defendants and were important to government's case in establishing the drug conspiracy charged in count one.  Agent Guzman's testimony regarding Edeza consisted of 60 pages of trial transcripts. Ms. Atteberry voiced eight objections in those 60 pages,  including a bench conference which covered 8 pages.  At the bench conference both counsel Atteberry and  McGuire vigorously tried to exclude, under Fed. R. Evid. 803(3),  Agent Guzman's "memory and belief" statements which he relied on to supplement the "unintelligible" portions of his conversations with Edeza  (Tr. Vol II, dated May 22, 2002, at 203-210).  After the close of evidence, Ms. Atteberry moved for a directed verdict on behalf of Edeza under Fed. R. Crim. P. 29, arguing the essential element of "interdependence" was not shown by government's evidence which was necessary to obtain a conviction under the drug conspiracy laws (Tr. Vol. V, dated May 28, 2002, at 813-814).  On  Edeza's behalf, attorney McGuire made a record

6

of his objections to several of the Court's jury instructions.[6] (Tr. Vol. V, dated May 28, 2002, at 824-827; see also Tr. Vol. II, dated May 22, 2002, at 383- 401).  Mr. McGuire also objected to drug quantities being stated in the interrogatories on the verdict forms, rather than being separately listed following the interrogatories to allow the jury to determine the drug quantity by a reasonable doubt standard of proof.  (Tr. Vol. dated May 28, 2002, at 826-827).   Attorney Atteberry gave her closing statement to the jury on May 29, 2002.  (Tr. dated May 29, 2002, at 38-53).

The Court finds that the trial transcripts establish that defendant's attorneys, Ms. Atteberry and Mr. McGuire, subjected the government's case to a meaningful adversarial test, as that term is defined in Cronic and Turrentine, and that Edeza was zealously represented by counsel during trial. Further, the Court finds that Edeza's statements are nothing more than mere conclusory allegations. Edeza does not articulate how defense counsel could have modified their trial strategy which would have caused a not guilty verdict to be rendered by the jury.   Accordingly, § 2255 relief on Edeza's first issue is denied.

As his second issue, Edeza argues, in the alternative, that he was denied effective assistance of counsel during pretrial and trial under the two-part standard established in Strickland.  (Dkt.# 321

---

[6]  Attorney McGuire objected to parts, or all, of  the following entitled jury instructions: As to Count One: Common Scheme or Plan; Federal Criminal Laws Conspired to Violate;  Object One of the Conspiracy-Possession With Intent To distribute; Lesser Included Offenses;  First Lesser Included Offense-Conspiracy To Possess 50 Grams or More; Second Lesser Included Offense-Conspiracy to Possess Less Than 50 Grams; Object Two Of the Conspiracy – Use of a Communication Facility; Felony Violation of the Federal Narcotic Laws – Defined. As to Count Two: Felony Violation of the Federal Narcotic Laws – Defined. As to Count Five: Felony Violation of the Federal Narcotics Laws – Defined. As to Count Eight: Lesser Included Offense; First Lesser Included Offenses - Possession of 50 Grams or More;  Second Lesser Included Offense – Possession of Less than 50 Grams; and Responsibility For Substantive Offense. Id.

7

at 5-9).  As previously stated, to establish a claim of ineffective assistance of counsel a defendant must show both deficient performance by his counsel and resulting prejudice.  Id. at 687.

A defendant can establish the first prong by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish the second prong, a defendant must show prejudice resulting from counsel's performance. Strickland, 466 U.S. at 687. That is, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

In his motion, Edeza voices numerous complaints against his attorneys.  Initially, Edeza complains of his inability to effectively converse with counsel, the interpreter, and the Court.  Edeza contends he could not speak, read or write English, he had an "extremely difficult" time communicating with his attorneys, he was unable to understand the interpreters during court proceedings, his attorneys would not translate all documents in writing from English into Spanish so that he could understand what was occurring, and the Marshals would not allow him to speak to the Court.  Edeza lists the following specific complaints against counsel McGuire: (1) "Mr. McGuire would not explain to me everything that was going on in my case, (2) I was not able to explain to him what I wanted to concerning my case because he was always in a hurry, (3) I asked my attorneys to provide me the cassette tapes that were allegedly recorded by the undercover agent, Guzman;

8

however, they never produced them, (4) I was not provided with the disclosure documents nor any other documents and pleadings translated in writing from English to Spanish, nor were they ever adequately explained; and (5) I did not trust him to fully and adequately defend me on the charges that were filed against me." (Dkt. # 321, Ex. A-2 at 2).

Edeza also claims that both his attorneys McGuire and Atteberry were constitutionally ineffective in representing him at trial because: (1) "I was not informed and did not know that I had the right to testify in my own behalf, (2) I was not asked if there were any witnesses to call and testify on my behalf, (3) I was prevented from participating in picking of a jury to act as my peers, (4) I was not informed that I had a right to present testimony, witnesses, or evidence at my sentencing hearing, (5) I was not adequately informed of the contents contained in my Pre-sentence Report, in either Spanish or English." (Dkt. # 321 at Ex. A-2 at 3).

Edeza also claims a conflict of interest occurred when Mr. McGuire was re-appointed to assist Ms. Atteberry during trial and that both attorneys were constitutionally ineffective in failing to object to the use of a jury instruction which constructively amended the indictment, or created a fatal variance. (Dkt. # 321 at 8-9).

Attorney McGuire rebuts Edeza's claims. McGuire states Edeza was highly antagonistic, very difficult to represent and he often refused to consult with counsel. McGuire states that during all his communications with Edeza an interpreter was present and Edeza acknowledged to him that he understood their conversations. Specifically, Mr. McGuire attests, in relevant part:

> At all times in this case, whether at the jail, or in the courtroom, Mr. Edeza was addressed with an interpreter present who translated all conversations with him. In each and every conversation with Mr. Edeza, we had interpreters present to translate documents and tapes in the case. In preparing for trial and discussing the evidence, Mr. Edeza was explained the government's evidence, the charges, and how a trial would proceed, including what evidence we could put on, which also included

whether or not he wanted to testify. Mr. Edeza never indicated verbally any request or desire to testify on his own behalf. Counsel and Edeza listened to all tapes produced of recorded conversations in the case, and reviewed the tapes and discovery documents with Mr. Edeza at the jail. Some of the tapes were in Spanish so he understood what was being said and would advise us of his understanding . . . At all times during these proceedings, including jail visits, Mr. Edeza was asked and he answered that he could understand the conversations with the interpreter and there was no problem with the language . . . Any decisions in this case about client participation, the evidence, government's evidence, or defendant's witnesses, and testimony including whether the defendant could or would testify, were fully explained to Mr. Edeza many times over due to his antagonistic behavior and demeanor when meeting with counsel and his interpreter . . . Long before the trial date arrived in May, 2002, Mr. Edeza was explained of the date approaching, the significance of trial, what would take place, what evidence the government had, what evidence was in the file, my evaluation of the evidence, how the sentencing guidelines impacted any plea of guilty, conviction, or potential exposure for him. Mr. Edeza was given ample opportunity to address the Court, talk to the judge, and also say anything he wanted to during the trial, sentencing phase, or any other time . . . Prior to sentencing, Mr. Edeza was advised of the contents and information in the Presentence Report, word for word, with an interpreter at the jail . . . We inquired of Mr. Edeza of his friends, family, or others who he thought could be here or would help us in this case, but he never offered any names, locations or witnesses, or any information about witnesses for his defense.

(Dkt. # 331, Attach. 2 at 2-6).

Attorney Atteberry's affidavit substantiates that of Mr. McGuire's. Ms. Atteberry recalls that Edeza never indicated that he had any witnesses or evidence that could be brought forward at trial, that he refused to listen or discuss the case in a manner that was of assistance, and that she inquired during trial if he wanted to testify even though he had indicated prior to trial that he did not want to testify. (Dkt. # 33, Attach. 1).

The Court is mindful that "contested fact issues in § 2255 cases cannot be resolved on the basis of affidavits." United States v. Hershberger, 940 F.2d 671 (10th Cir. 1991) (unpublished) (citing

Friedman v. United States, 588 F.2d 1010, 1015 (5ᵗʰ Cir. 1979)).[7]  The Court is required by § 2255 to hold an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255, see also United States v. Marr, 856 F.2d 1471, 1472 (10ᵗʰ Cir. 1988).

With this standard as a guide, the Court thoroughly reviewed the pleadings, files, trial transcripts, and record in this case, and from said review the Court finds that counsels' statements are corroborated by the record, and Edeza's statements are refuted. Thus, the record conclusively shows that the defendant is entitled to no relief on this claim and an evidentiary hearing is unnecessary.  Edeza's statements are nothing more than conclusory allegations which he attempts to bolster by declaring them by affidavit.   In contrast, counsels' affidavits recite facts which are supported by the record.

Counsel's statement that he fully explained the criminal proceedings to Edeza with a qualified interpreter present is corroborated by the CJA vouchers submitted by attorney McGuire and the Court appointed interpreter Sebastian Lantos.  Mr. McGuire claimed 79.1 hours for interviews and conferences,  63.7 hours for obtaining and reviewing records,  20.1 hours in travel time,  and 52.5 for legal research.[8] (Dkt. # 278).  On July 17, 2001, the interpreter invoiced the government $484.92 for his time in conference and proceedings prior to the commencement of trial, and for transcription and translation of documents from English to Spanish, and  $1,192.40 for additional transcriptions

---

[7]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed.R.App. 32.1:10th Cir.R. 32.1.

[8]  In comparison, the CJA voucher filed by Frank Lockhart, the appointed counsel for co-defendant Fernandez, shows in the same case Lockhart claimed 31.3 hours for interviews and conferences, 47.8 hours for obtaining and reviewing records, and 31.7 hours for legal research and writing. (Dkt. ## 146, 218, 251).

and translations for the period August 6, 2001, to August 24, 2001. (Dkt. ## 116, 134).[9] Post trial, the interpreter invoiced the government an additional $400 for services rendered from September 6, 2002, to December 18, 2002. (Dkt.# 276).

The Court referred counsels' fee requests to the Magistrate Judge for a report and recommendation. (Dkt. # 254). The magistrate recommended and the Court approved the 79.1 hours claimed by Mr. McGuire for interviews and conferences by finding credible counsel's claim that "[d]efendant Edeza was difficult to communicate with and required an inordinate amount of patience during those communications. Counsel further explained that the communications were accomplished through a translator which added to the time. This category also includes numerous conferences between counsel and family members of the defendant as well as extensive communication with the Assistant United States Attorney and the investigating agents."[10] (Dkt. # 261 at 5-6).

Edeza's complaint that counsel McGuire did not spend adequate time with him is not only refuted by the record, but the record is replete with instances where Edeza refused to cooperate with counsel or assist in his own defense. The Tenth Circuit instructs that "[t]he adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own actions or inactions." United States v. Miller, 907 F.2d 994, 998 (10th Cir. 1990). Edeza was arrested on June 26, 2001, and counsel McGuire was appointed to represent him on that same date. (Dkt. # 32). As early as July 24, 2001, counsel filed notice of Edeza's failure to cooperate.

---

[9]   In contrast, the interpreter who translated for co-defendant Fernandez invoiced the government $940 for transcription and translation of documents from English to Spanish from May 29, 2001, through June 12, 2002, and $60 for translation December 1, 2002. (Dkt. ## 219, 274).

[10]   Counsel McGuire was not awarded attorney fees for representing Edeza as co-counsel at trial because McGuire volunteered to "donate" his time during trial to assist Edeza, co-counsel Atteberry and the Court.  (Dkt. # 272 at 2; Tr. dated May 20, 2002, at 4).

> [T]he defendant is refusing to meet and discuss the issues in this case at the Tulsa County Jail with counsel . . . Counsel and the interpreter, after spending more than an hour during this attempt, left the jail without seeing Mr. Edeza . . . There are many documents and tapes to review in  this case with the defendant, and without the assistance and cooperation of the defendant, it is difficult to accomplish any of the work necessary to have the defendant fully informed and ready to proceed in accordance with the schedule.

(Dkt. # 44 at 1-3).

On August 20, 2001, a joint motion to continue the trial date was filed by the defense attorneys to allow more time to receive and review the "huge" discovery file and allow defense counsel to go over those documents with the defendants. (Dkt. # 55 at 1-3).  A statement within government's trial brief confirms that the tape recordings were provided to counsel in Spanish to allow the defendants the opportunity to hear the tapes and to challenge the accuracy of the tapes. Government advised the Court that none of the defendants challenged the accuracy of the tape recordings. (Dkt. 169 at 35).

At the May 20, 2002,  ex parte hearing conducted prior to jury selection, counsel McGuire again advised that Edeza refused to speak to and meet with attorney Atteberry or assist her in trial preparations. (Tr. dated May 20, 2002, at 3).  Accordingly, attorney McGuire volunteered to "donate" his time as co-counsel at trial as an additional precaution that Edeza receive effective representation. (Dkt. # 272 at 2; Tr. dated May 20, 2002, at 4).  The Court addressed Edeza directly to confirm that it was his desire to have both attorneys represent him at trial:

| | |
|---|---|
| The Court: | All right.  It's my intention that they will both represent you together.  Is that something that is acceptable to you, sir? |
| Edeza: | Yes. |
| The Court: | All right.  And will you cooperate with them as a joint trial team, sir? |
| Edeza: | Yes. |

13

(Tr. dated May 20, 2002, at 11).  Edeza's consent to proceed to trial with two attorneys dispels his claim that a conflict of interest was created by the Court re-appointing attorney McGuire as co-counsel.

Edeza does not deny counsel's statement that counsel reviewed with him, through an interpreter, all the discovery documents, pleadings and tape recordings.  Rather, Edeza's complaint is that counsel did not provide him in written form the Spanish translations of the disclosure documents, other documents, and pleadings and transcripts of the recordings.  Counsel was following an Order of the Court that all documents were to be translated verbally by an interpreter rather than be provided to the defendant in writing.  (Tr. dated December 4, 2002, at 20).  Accordingly, counsel cannot be held ineffective for complying with the directives of the Court.

Further, the Court finds that Edeza has failed to articulate how his defense was prejudiced by his counsel's failure to provide him with written translations of all the disclosure documents, pleadings and written transcripts of the Spanish tape recordings.  The record shows that in each and every instance that counsel approached Edeza to discuss his case, review pleadings and listen to tape recordings, an interpreter was present to translate English to Spanish and aid in his communications with counsel.  No limitations on Edeza's use of an interpreter has been shown.  There is no indication in the record, or the trial transcripts, where Edeza expressed dissatisfaction with the performance of his court-appointed interpreter.  Further, Edeza fails to offer any factual allegations indicating that he suffered actual prejudice from the lack of a written translation of these documents or that such lack affected the integrity of the proceedings.  Absent such a showing, Edeza has failed to establish ineffective assistance of counsel. See, e.g., United States v. Perez-Perez, 44 Fed. Appx. 921, 923-24

14

(10th Cir. 2002) (unpublished); <u>United States v. Perez-Aguirre</u>, 49 Fed.Appx. 235, 237 (10th Cir. 2002) (unpublished).

The Court finds that the record substantiates counsel's statement that  he met with Edeza on numerous occasions, discussed activity in his case, reviewed discovery with him, allowed Edeza to listen to the Spanish tape recordings and otherwise made a bona fide good faith effort to include Edeza in trial preparation, and that counsel was prepared for trial even though counsel faced an uncooperative and antagonistic client.  "If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance."  <u>United States v. Cronic</u>, 466 U.S. at 657 n.21.

Edeza claims his attorneys were ineffective because they did not inform him that he had a right to testify at trial and that the decision to testify was his alone to make, they did not ask him if there were any witnesses to call and testify, and they prevented him from participating in picking a jury.  The Court  first  notes that government's evidence at trial was substantial, consisting of, <u>inter alia</u>,  nineteen  recorded telephone calls and video encounters of  Edeza, Fernandez and undercover Agent Guzman participating in drug trafficking conversations that involved substantial quantities of methamphetamine;  still photographs of Edeza, Fernandez and undercover Agent Guzman; co-conspirator testimony implicating  Edeza and Fernandez in the offense; and government's seizure of the methamphetamine at the time of  Edeza's arrest.  Additionally, prior to trial, government filed a notice of intent to seek sentencing enhancements under 21 U.S.C. § 851(a)(1), based on Edeza's prior felony conviction for possession with intent to distribute heroin.  On March 26, 2002, a stipulation was entered between the government and counsel that Edeza's prior bad acts and criminal history would be excluded from evidence unless Edeza testified at trial or placed his character in issue by

15

calling character witnesses. (Dkt. 148 at 1-2).  Counsel McGuire's statement that he discussed with Edeza his right to testify and the potential consequences of his testimony is evident by the stipulation filed of record. This factor would reasonably discourage a defendant from taking the stand and testifying at trial.

Edeza's claims are mere conclusory allegations because he does not identify what favorable testimony he would have provided in his own defense nor name any witnesses he would have called, the substance of their testimony, or any exonerative benefit of their proposed testimony.  Since prior to trial Edeza did not challenge the accuracy and the validity of the recorded tapes of his conversations with  undercover Agent Guzman, the effectiveness of  his testimony at trial to challenge the accuracy of those tapes was limited.

 Edeza's decision not to testify is consistent with his hostile behavior throughout the proceeding and his refusal to speak to and cooperate with counsel.  "If there is no bona fide defense to the charge, counsel can not create one and may disserve the interests of his client by attempting a useless charade."  United States v. Cronic, 466 U.S. at 657 n.19.  Thus, the Court finds that counsel's challenged conduct could be considered sound trial strategy and that Edeza has failed to establish any prejudice resulting from his failure to testify, call witnesses or participate in jury selection.  Without the necessary showing of prejudice, Edeza can not meet the second prong of the Strickland test.  See United States v. Walters, 163 Fed.Appx. 674, 683 (10th Cir. 2006) (unpublished); United States v. Larsen, 175 Fed.Appx. 236240 (10th Cir. 2006) (unpublished).

Edeza claims his counsel was ineffective because he was not adequately informed of the contents of his presentence report, either in Spanish or English, and counsel failed to inform him that he had a right to present testimony, witnesses, or evidence at his sentencing hearing.  Here again, the

record refutes Edeza's contentions. Edeza's sentencing hearing was continued for 40 days following issuance of the presentence report to allow the defense attorneys sufficient time to review the presentence report with the defendants. (Dkt. ## 224, 225 and 226). Edeza's counsel filed a 50-page objection to the presentence report which included 35-pages of attachments to support his objections. Although Edeza was reportedly "very argumentative and grabbed the report from Ms. Atteberry" the record shows that counsel eventually reviewed every page of the report with Edeza, and at Edeza's request counsel reviewed the report several times over. (Dkt. 229 at 2). Counsel filed twelve line item objections to the report and delivered a copy of defendant's objections to Edeza on November 29, 2002. At that time the objections were explained and translated to the defendant by an interpreter. (Dkt. 229 at 3). At the sentencing hearing on December 4, 2002, counsel advised the Court that Edeza had requested that the presentence report, objections and the probation officer's response be provided to him translated in written form.

> McGuire: The defendant advised me before we got started here, Your Honor, he wants copies of all pleadings and the Presentence Report, our objections and any responses to anything translated in Spanish. I have advised him through the interpreter that we are translating it for him, have translated it for him as we've gotten to this point. Should the Court order us to do something additional we will do it, but I think that up to this point, you know, we're trying to do everything we're required to do with him.

> Court: And is it your representation for the record that each of those pleadings at some point or another has been translated to him in Spanish?

> McGuire: Absolutely, Your Honor.

> Court: Okay. The record will so reflect.

(Tr. dated December 4, 2002, at 20).

The sentencing hearing was continued for an additional two weeks with directives to the government to submit proposed findings and conclusions on the issue of the three-point enhancement under Sentencing Guidelines § 3B1.1 (b) that government sought for  Edeza's alleged  role  as a supervisor and manager in the drug conspiracy.  Defense counsel was allowed four days to respond. Both parties were restricted to citations from the trial transcript as evidence to support or refute the §3B1.1(b) enhancement.

Thus, the Court finds no merit to Edeza's claim that counsel was ineffective at his sentencing hearing.  The record shows that counsel made several trips to the county jail to discuss all aspects of the sentencing process with Edeza and counsel was complying with the Court's directive that evidence offered on the enhancement issues be restricted to the trial exhibits and transcripts.

Edeza claims  that counsel was ineffective in failing to object to the jury instruction supporting the Travel Act offense because  it constructively  amended the indictment.[11]  He contends that if counsel had objected to the instruction at the trial level, then he would have received a favorable standard of review on direct appeal.  Specifically, Edeza states, "[s]uch failure to timely object resulted in the appellate court's review under the plain error analysis under U.S. v. Cavely, 318 F.3d 987 (10th Cir. 2003), rather than the clear error under Easley v. Cromartie, 532 U.S. 234 (2001)." (Dkt. # 321 at 8-9).  Edeza is correct  that a plain error standard of review is used on appeal when no objection was made to the jury instruction or its content on the trial level.  United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994).  However, when an objection to a jury instruction was made at

---

[11] "[A] constructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."  United States v. Cavely, 2318 F.3d 987, 999 (10th Cir. 2003).

the trial level, the appropriate standard on appeal is <u>de novo</u> review, not clear error.  <u>Id.</u>  Applying a <u>de novo</u> review, the court determines "whether the jury, considering the instructions as a whole, was misled.  Only where the reviewing court has 'substantial doubt that the jury was fairly guided' will the judgment be disturbed."  <u>Id.</u>

On Edeza's direct appeal, the Tenth Circuit applied the plain error standard of review and held that Edeza's conviction of the Travel Act offense was not subject to reversal because the defendant had failed to establish the fourth prong of a plain error review, that is, whether the alleged constructive amendment "affected the fairness, integrity, or public reputation of judicial proceedings."  <u>United States v. Edeza,</u> 359 F.3d at 1251.  The circuit court interpreted this language "to prohibit recognition of plain error when evidence of a defendant's guilt on the challenged point is overwhelming and essentially uncontroverted."  <u>Id.</u>  In Edeza's case, the court explained that although the grand jury only indicted Edeza for traveling in interstate commerce to aid the unlawful activity of drug trafficking under 18 U.S.C. §1951, the statute also provides for a separate conviction for using a facility in interstate commerce to aid the unlawful activity.  The constructive amendment occurred when the trial court instructed the jury that Edeza was charged in the indictment with <u>both</u> offenses under § 1951.  In denying reversal of Edeza's conviction under a plain error standard of review, the Tenth Circuit said that the charged offense and the uncharged offense under § 1951 were closely linked and that because there was overwhelming and essentially uncontroverted evidence of Edeza's guilt on the uncharged offense,  his conviction of that uncharged offense would not affect the fairness, integrity or public reputation of the judicial proceeding.  <u>Id.</u> at 1253.  This Court finds that  even if counsel erred by not objecting to the Travel Act jury instruction at the trial level, Edeza has failed to show that the results of his direct appeal would have been different under a <u>de novo</u>

review because the appellate decision was premised on Edeza's guilt being established by "overwhelming and uncontroverted evidence." Therefore, it is doubtful that the jury, considering the instructions as a whole, was misled.  The Court finds that Edeza has failed to establish prejudice, and thus his second issue is denied.

Both Edeza's third and fourth issues invoke the application of  United States v. Booker, 543 U.S. 220 (2005),  and Blakely v. Washington, 542 U.S. 296 (2004).[12]  (Dkt. #  321 at 10-12).  Edeza expressly withdrew these two issues in his reply brief  by conceding that the Tenth Circuit has ruled that Booker and Blakely do not have retroactive application on collateral review to convictions that were final at the time the cases were decided by the Supreme Court.  (Dkt. # 321 at 12).  Edeza's judgment became  final on June 1, 2004.  Blakely was decided on June 24, 2004, and Booker was decided on January 12, 2005.  The Court finds Edeza is unable to benefit from the holdings of either of these cases and thus his third and fourth issues are denied.

As his last issue, Edeza contends that because he is a citizen of Mexico, he was prejudiced by the denial of rights afforded to him under Article 36 of the Vienna Convention.  Edeza contends that he was not informed he had a right to consult with a consular official from Mexico as provided by the Vienna Convention.  He claims prejudice because he did not have someone from Mexico explain to him the American criminal justice system and the rights to which he was entitled  under the United States Constitution.  (Dkt. # 321 at 14-15).

─────────────────

[12]    Edeza claims in his third issue that he was denied his Sixth Amendment right to a jury trial when his sentence was enhanced under the Sentencing Guidelines based on facts not submitted to a jury for determination beyond a reasonable doubt. In his fourth issue, Edeza claims he was derived of due process guaranteed by the Fifth Amendment by the Sentencing Guidelines mandating the Court's determination of his sentencing enhancements under a preponderance of evidence standard.

As a preliminary matter, the Court finds that because resolution of Edeza's fifth issue requires consideration of matters set forth in his presentence report dated November 26, 2002, the Clerk shall be directed to file the presentence report of record under seal.

Edeza could have, but did not, raise his fifth issue on direct appeal. The government correctly states that a § 2255 motion is not available to test the legality of matters which should have been raised on direct appeal.  See United States v. Walling, 982 F.2d 447, 448 (10th Cir. 1992).  A failure to raise an issue on direct appeal thus acts as a bar to raising the issue in a §2255 motion unless the defendant can show cause and actual prejudice or can show that a fundamental miscarriage of justice will result if his claim is not addressed.  See United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994). This procedural bar applies to collateral attacks on a defendant's sentence, as well as his conviction. Id.  Although the Tenth Circuit has left unresolved the issue of whether the Vienna Convention creates individually enforceable rights, see United States v. Cazares, 60 Fed.Appx. 223, 226 (10th Cir. 2003) (unpublished), the Supreme Court has determined that the rule of procedural default applies to Vienna Convention claims raised in federal habeas corpus proceedings challenging state convictions.  Breard v. Greene, 523 U.S. 371 (1998); see also Sanchez-Llamas v. Oregon, 548 U.S. 331, 360 (2006) (Vienna Convention claim procedurally defaulted when omitted on direct appeal from conviction in state court and first raised in a post-conviction proceeding).

In this case, the Court finds that even if Edeza could demonstrate cause for failing to raise the Vienna Convention claim on direct appeal, he has failed to show that he suffered any prejudice from the denial of such rights. In his reply (Dkt. # 338), Edeza asserts he "was prejudiced by the violation of his Vienna Convention rights because no one assured that he understood the complexity of the American criminal justice system." He also claims that his lack of understanding is the only "rational

21

explanation" for his "antagonistic behavior and demeanor when meeting with counsel." (Dkt. # 338). However, the record dispels Edeza's claim that he is unfamiliar with the legal system in the United States. Edeza entered the United States illegally in 1991 and remains an illegal alien. (Presentence Report, dated November 26, 2002, at 13). The record shows that Edeza has had ample contact with the laws of this country through his interaction with other family members that reside in the United States, his association with other convicted felons, and his prior felony arrests.

At the time of his conviction in this case, Edeza had resided in the United States for over eleven years; his brother, Ernesto, age thirty-five, lived in Salt Lake City, Utah, and was employed in a meat processing plant; his sister Gloria, age thirty, lived in Los Angeles, California, and was employed in residential cleaning; his sister Lucia, age twenty-eight, lived intermittently in California, and was employed in a retail clothing shop; his brother Amado, age twenty-seven, lived in Los Angeles with his sister Gloria, and was employed as a landscaper; his brother Jamie, age twenty-five, was convicted in Tucson, Arizona, for assisting illegal aliens to cross the border; and his sister Elena, age nineteen, lived in Washington State, and was employed as a fruit picker. Id. at 14. Edeza has had relationships with three women which has led to the birth of five children all of whom are residents of Los Angeles. Edeza has been employed in the United States as a day laborer, a painter and a general laborer in the construction industry. He has also worked as a van driver for a clothing company and in a bedspread factory, both located in Los Angeles. Id. at 15.

Edeza has had prior criminal cases brought against him. In 1994, Edeza was convicted for possession with intent to distribute heroin in Los Angeles County Court, receiving a 180-day suspended sentence with 36 months probation. Id. at 11. In that case, it was reported that Edeza was "a professional drug dealer" who was involved with a "very large and sophisticated heroin

distribution network." Id. at 11.  One detective in Los Angeles noted that Edeza had been arrested

on another occasion in a much larger case which led to several of Edeza's cousins being charged.

In fact, at the time of his arrest on the instant offense, Edeza was subject to an outstanding arrest

warrant in Los Angeles County for selling heroin in violation of the conditions of his probation.  Also

in 1994, Edeza was convicted of a misdemeanor offense of burglary and was sentenced to three days

in jail with two years suspended. Under these same circumstances the Tenth Circuit has held that a

defendant is not entitled to any relief as a result of a Vienna Convention violation.  See Cazares, 60

Fed.Appx. at 226.

          Moreover, Edeza has failed to show that a fundamental miscarriage of justice will result if his

claim is not addressed because Edeza does not assert that he is actually innocent of the crimes for

which he was convicted.  Further, there is no evidence that following his conviction he made any

attempt to seek assistance from the Mexican consulate.

          From a review of the record, it is clear that Edeza offers no reason to be dissatisfied  by the

representation of his attorneys or the lack of knowledge of his rights under the Vienna Convention.

The record establishes, and the Court so finds, that Edeza's dissatisfaction is with the federal drug

trafficking laws, his status as a repeat offender, the consequences of a federal indictment, the federal

statutory maximum sentence for the crimes charged, the calculation of his sentence under the Federal

Sentencing Guidelines, and the sentence imposed on his conviction.  It was because Edeza's attorneys

repeatedly informed him of his rights, responsibilities and liabilities under the federal legal system

that Edeza became hostile, belligerent, and uncooperative.  In defiance, Edeza  refused to speak to

his attorneys, to review the disclosure documents, pleadings and tapes, to testify at trial, or to proffer

any relevant evidence in his own defense.

Accordingly, the Court finds that Edeza's Vienna Convention claim is procedurally barred because he has not shown that he suffered any prejudice from the denial of his rights under the Vienna Convention or that a miscarriage of justice would occur if his claim is not considered. Therefore, § 2255 relief on Edeza's fifth issue is denied as procedurally barred.

**Conclusion**

The Court finds that defendant Edeza  has failed to show that the sentence imposed by this Court is unconstitutional requiring it to be  vacated, set aside or corrected. Section 2255 provides that the district court shall conduct a hearing unless the motion and records conclusively show that defendant is entitled to no relief.  In this case, the Court concludes that the record conclusively shows that defendant Edeza is entitled to no relief, and a hearing is unnecessary.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The Clerk shall file the presentence report dated November 26, 2002, of record under seal.

2.      Defendant's motion to vacate, set aside, or correct sentence by a person in federal custody (Dkt. # 321) is **DENIED**.

**DATED** this 29th day of October, 2008.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE